Porter, J.
A rehearing has been granted in this case, and the first question to be de *555 cided is, whether the father-in-law of the defendant was a competent witness on the trial of the cause.
The counsel who argued this case, have taken great pains in bringing forward every authority which bears upon the question; and the court has been furnished with abundant materials on which to form a correct judgment.
After all that has been said, I think, however, it will be found that this question lies in a narrow compass; and that it must be decided on the meaning which shall be attached to certain expressions used in our Code and statutes.
It appears very satisfactorily, that in Spain, persons standing in the relation of the present witness, could not testify. Whether this was in virtue of any expressions of their positive laws excluding them, or whether it was the consequence of a system, which, acting on different principles from our own, multiplied objections to the competence, and disregarded those which go to the credit, need not be considered. The first and most important enquiry is, what change has been introduced here on this subject by legislative enactment ?
*556 By an act passed in the year 1805, 2 Martin's Dig. 160, it is provided, that no free white witness shall be disqualified from testifying on the ground of being incompetent, unless such witness shall, at the time of producing him, be interested or infamous; and all other objections shall go to the credit, not to the competence.
This act made the father-in-law competent to give evidence in cases similar to that now before us. And it is an important observation, and one which it is necessary to bear in mind. When we come hereafter to consider the effect of certain expressions in our Code, that this law did not alone enable witnesses to testify who were before excluded ; but that it introduced a complete change on this subject, in our jurisprudence : expunged at once all the minute and particular distinctions which formerly existed, as to persons connected with the parties in the suit, or subject to their influence; and by restricting the objections which go to the competence, and increasing those to the credit, established an entirely new system as to evidence and proof.
From the passage of this law, until the promulgation of our Code, the witness rejected *557 in this cause, could have been heard. The jury, or the court before whom he gave evidence, it is true, were authorised to take into consideration the relationship in which he stood to one of the parties, and it might affect his credit. But he was clearly competent, and remains so, unless it has been since declared by the same authority, that his testimony cannot be received.
The Code, 312, art. 248, after stating who are competent witnesses, declares that ascendants cannot testify in respect to their descendants, nor descendants in respect to their ascendants. These expressions, it is contended, exclude the father-in-law. The counsel for plaintiffs supports this conclusion, by reference to the laws of Spain; and has introduced a variety of authorities to shew, that by its jurisprudence, expressions such as those, include ascendants by affinity, as well as consanguinity. He has not proved this position satisfactorily to my mind. Admitting that he has made it doubtful, we must then consider, if making it so can repeal a former law, and that too, in a case where, as far as I can ascertain the intention and policy of the law-maker, are directly opposed to the doctrine for which he contends.
*558 The first difficulty which suggests itself to the mind, on the perusal of the passage cited is, that if we adopt the construction which the plaintiffs contend for, we affix to the word ascendants, a forced meaning, very different from the ordinary sense in which mankind understands them; and in doing so, violate a rule for the construction of statutes which teaches us, “ that the words of a law are to be understood in their known and usual signification—their general and popular use.” Civ. Code, 4, art.
Another difficulty presents itself. If we say that by ascendant is meant the father-in-law, how shall we construe the same words when we are about to ascertain who are forced heirs? It being contrary to the known principles of our laws, to consider as such a relation by affinity.
The first objection is met on the part of the plaintiffs, by contending that the words must be taken in their legal sense; and the second, by shewing, that according to the law, as it stood previous to the enactment of the Civil Code, it was provided, that ascendants by affinity could not inherit.
The plaintiffs still further insist, that under *559 the construction contended for, a man might marry his wife's mother, as the law makes no distinction in that article, where it forbids ascendants and descendants from intermarrying. To this the defendant replies, that the law of Spain expressly prohibited them. Par. 4, tit. 6, l. 5.
Thus, it appears, that the plaintiffs and defendant endeavour to escape from the inconsistencies into which this construction would lead them, by referring the court to the former laws of the country, and they have succeeded perhaps, in shewing that the expressions ascendants, in our Code does, in the one instance, exclude those by affinity, and in the other, include them; or rather they have proved, that when the legislature used these words, they did not, in either of the cases put, conceive they were at all acting on the rights or duties of relations by affinity.
How then stands the question before the court, in relation to witnesses ? Why, according to my opinion, ascendants by consanguinity were alone meant. But admitting, and it is the utmost the defendant can require, that it is. doubtful, if it did not extend to relations by marriage ; this will not be sufficient *560 to repeal the former law, which rendered the witness competent. More must be done than raising a doubt; the law must be clearly repealed Civ. Code, 6, art. 24.
If we have recourse to the intention of the legislature as a guide, it is very evident to me that they did not contemplate augmenting objections to the competence of witnesses further than was absolutely necessary ; and that the article which has given rise to this discussion, was passed in the same spirit, and with the same view as the act of the legislative counsel already cited.
I have examined, with attention, all the authorities cited by defendant’s council. They fall far short of establishing that whenever the words ascendants and descendants are used in law, they literally mean those who have become so by marriage.
The objection taken on the ground of interest, is too remote; and on the whole, I think the witness was competent.
I am therefore, of opinion, that the judgment of the district court be annulled, avoided and reversed, and that the cause be remanded for a new trial, with directions to the district judge not to reject, as an incompetent *561 witness, the father-in-law of the defendant, unless objections should be made to his testifying other than appears on the record now before this court.
Martin, J.
I think the district judge was correct in rejecting the testimony of the defendant’s father-in-law.
It is admitted, that in Spain he could not have been a proper witness; but held, that under the Civil Code, the objection goes only to his credibility.
This would be correct if, as the defendant’s counsel urges, the word ascendants had but one signification. I think it has two.
Lato sensu, it includes persons related or connected in the ascending line, by consanguinity or affinity; and in a more restricted sense, it includes only those related by consanguinity. Ascendentes sunt affines vel consanguinei. Gregorio Lopez.
When a word has more than one signification, no party has a right to chose ad libitum, that in which it is to be taken in the argument ; it must be understood secundum subjecti materiam.
Consanguinity is the basis of the laws which regulate the degrees between which marriage *562 be forbidden; the rules of succession and tutorship, the recusation of judges, and the admission or rejection of persons who are offered as witnesses.
Affinity is the basis of the same laws, with the exception of those which regulate successions. 1 Domat, v.
In the following sentence, “ marriage between persons related to each other in the ascending or descending line is prohibited ; the words, ascending line, must be understood lato sensu, so as to include the line by affinity, and that by consanguinity ; because affinity and consanguinity are both the basis of the laws which regulate the prohibition of marriage between persons related to or connected with each other. Civ. Code, 24, art. 9.
In the following sentence of the same statute, “ there are three classes of legal heirs ; the father and mother, and other lawful ascendants, the last word must be taken in the more restricted sense; because, consanguinity alone, and not affinity, is the basis of the laws which regulate successions. Civ. Code, 144, art. 10.
Were we to take the word in the same sense, in both these: sentences, we would *563 come to the conclusion ad absurdum. The moral sense recoils at the idea of a man uniting himself in marriage with his son's widow; and the social order forbids that she should inherit and carry his estate into her family, to the exclusion of his lineal or near collateral relatives.
If it be granted that the same word may have a different signification in different parts of a Code, what is that of the word ascendants in the following sentence ? "Neither can ascendants be witnesses with respect to their descendants.” Civil Code, 312, art. 248.
I think lato sensu, because both consanguinity and affinity are the basis of the laws which regulate the admission or rejection of witnesses.
No case is better calculated to put the question, in a fair point of view, than the one under consideration.
The defendant seeks to establish the legality of a purchase of certain negroes, during his marriage. The result of the purchase, if it it be established, is the joint title of the defendant and his wife. If he introduced, to support this title, his own father, the objection would be, that the witness came to est *564 ablish his son’s title — that a parent cannot be viewed as an impartial witness, nay a disinterested one, when he comes to support his child’s right. But he offers his father-in-law, who, it is contended, is not under the same bias. Why not? By establishing the defendant’s purchase, the father-in-law establishes his own daughter’s right; a title common to her and her husband. The interest of both fathers in the property in dispute, is precisely the same. Nothing stands between Neither of them, and his title to the slaves, but the life of his child, if the latter has no issue. On the death of the defendant, his father would, as a forced heir, claim his inheritance, of which one half of the slaves would make a part. On the death of the defendant’s wife, his Father-in-law, now offered as a witness, would stand precisely in the same situation. To the exclusion of either of these men, there are, in my humble opinion, the same reasons, and ubi eadem, est ratio eadem est lex.
It is said there is no evidence of a community of goods between the defendant and his wife. Such a community, though not of the essence, is of the nature of the contract of marriage, in this state, and the exclusion of it ought not to be presumed.
*565 If there be any case in which the principle that cases which are within the mischief intended to be prevented, though not within its letter, are to be included in the remedy. (1 Black.) this is one of them.
I conclude, that the placing of the father-in-law on a footing with the father, as to the incapacity of testifying, or of contracting marriage, does no violence to the words of the Code, and is perfectly within its sense and meaning.
Farther, the witness is interested in the event of the suit, being liable for costs.
And, that the judgment of the district court ought to he reversed.
Mathews, J.
A rehearing having beep granted in this case, I have considered attentively the briefs of argument, and am able to discover nothing erroneous in the judgment given by this court, except that part of it which relates to the rejection of the father-in-law of one of the parties, who was offered as a witness in the court below.
It is clear that the father of a man’s wife cannot be a witness for him, according to the provisions of the Spanish law. But after much reflection on the subject, I am of opini *566 on, that the rules of former laws, on the subject of the competency or incompetency of witnesses, were repealed by our act of the territorial legislature of 1805. It may be assumed, as a just principle in jurisprudence, that all persons are competent to testify in courts of justice, except such as are prohibited by law. The act of the legislative council renders incompetent persons who, for want of age, must be supposed to be deficient in discretion; those who are interested or infamous; a husband for or against his wife, and the wife for or against her husband. These are the only description of persons disqualified from testifying on the ground of incompetency by this law, which certainly repealed the law of Spain on the subject of witnesses.
Our Civil Code purports to be a digest of the laws previously in force in the country, but undoubtedly owes its validity and effect to the authority given to it by legislative acts. And in cases when its provisions differ from the rules of the ancient laws, those prescribed by the Code must prevail. The doctrine of the Spanish laws, respecting the incompetency of witnesses, has been revived since the introduction of the Code, so far as it relates to *567 ascendants and descendants; but I am of opinion, that these expressions do not ex vi termini, embrace relations by affinity. As to the objection raised to the competency of the witness in the present case, on account of interest, arising from the possibilities that his son-in-law may gain property, that his wife may be entitled to one half of the acquets of the community, that they will not be used nor wasted during the partnership, and that her father may succeed to such inheritance; all these circumstances I consider as raising an interest too remote to render the witness incompetent.
Although, from my present view of the subject, I have discovered nothing erroneous in our former judgment, further than that which relates to the bill of exception, yet as the cause must be sent back for a new trial, should it come before this court again, I feel at liberty to change the opinion which I now hold.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the case be remanded for a new trial.